IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE IVAN LOPEZ,<br>    *Plaintiff*, | : <br> : <br> : | |
| v. | : <br> : | CIVIL ACTION NO. 21-CV-4388 |
| CITY OF LEHIGH COUNTY, *et al.*<br>    *Defendants*. | : <br> : | |

<u>**MEMORANDUM**</u>

**PAPPERT, J.**                                                                                 **January 11, 2022**

George Ivan Lopez, a convicted prisoner currently incarcerated at SCI-Phoenix on the capital case unit, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. For the reasons that follow, on statutory screening required by 28 U.S.C. § 1915A, the Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

I

Lopez has named the following Defendants: "City of Lehigh County," Lehigh County District Attorney James B. Martin ("DA Martin"), Pennsylvania Attorney General Josh Shapiro ("AG Shapiro"), Joseph Hanna, and "Jane and John Doe." (ECF No. 2 at 3-4.)[1] All Defendants are sued in their individual and official capacities. (*Id.*) Lopez claims he "is a wrongfully convicted prisoner," asserting that his First, Fifth, and Fourteenth Amendment rights have been violated. (*Id.* at 3.)

Lopez contends that between 2019 and 2021, he "has made numerous attempts via letters to all named defendants, pertaining to the creation of a *'Conviction Integrity Unit ('CIU')* at the Lehigh County District Attorney's Office, as afforded to the Philadelphia county only." (*Id.* at 4.) (italics in original). Lopez questions why only one Pennsylvania

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

County is "afforded CIU protection," "depriving the other 66-counties of the same equal protection rights and moreso [sic] **due process of law**." (*Id.*) (bolded emphasis in original). Lopez asserts that the "Philadelphia Conviction Integrity Unit ('PCIU') . . . has had hundreds of submissions in the first year alone" based on such claims including, but not limited to, police and prosecutor misconduct, corruption, actual innocence, and wrongful conviction. (*Id.* at 5.) Lopez asserts that, by virtue of the PCIU,

> all access to the court, Due Process and Equal Protection, discovery, investigation and equal treatment of law, among other reliefs and privileges are afforded *only* to the Philadelphia convicted prisoners to insure there are not any miscarriages of justice. However, all other **66-counties** in Pennsylvania as Lehigh County similarly situated prisoners are deliberately denied their constitutional rights to equitable treatment of law.

(*Id.* at 6.) (bolded emphasis in original). Lopez further asserts that the PCIU "has included discovery as part of its efforts to remedy the root cause of problematic wrongful convictions" and has permitted open discovery "to ensure that defendants have access to all exculpatory and impeachment material in their possession." (*Id.* at 7.)

Lopez has provided the foregoing as background to his claims, asserting that he can "demonstrate that the defendants [DA Martin, AG Shapiro, and the City of Lehigh] have intentionally and with fraudulent intent concealed exculpatory evidence from him with respect to []his criminal prosecution and conviction in Lehigh County." (*Id.*) Lopez avers that the exculpatory evidence "is in the sole possession of the defendants and which establishes [he] is actual[ly] innocent" and demonstrates "clear and convincing evidence of ***'Prosecutorial/Police/judicial misconduct and corruption'*** on the highest of levels at the Lehigh County Courthouse Attorney General's office." (*Id.* at 7-8.)

Lopez asserts that DA Martin, AG Shapiro and the City of Lehigh "have engaged in criminal conspiracy with the sole intent to fraudulently conceal exculpatory evidence pertaining to the jailhouse informant, Daniel Lopez, AKA Timoteo Paladino and co-

defendant Miguel Moreno, among countless documentation of exculpatory and impeachment evidence" and have "conspired to intentionally deprive" him of due process and equal protection by refusing to provide him "with his inherent right to full discovery" as delineated in *Brady v. Maryland*.  (*Id.* at 8.)  Lopez asserts that he learned about the existence of exculpatory evidence in August 2021 that "was being withheld and suppressed by [DA Martin, AG Shapiro, and the City of Lehigh]" which has been fraudulently concealed for decades, and which "establishes a wrongful conviction has taken place by way of fraud by officers of the court." (*Id.* at 9.)

Lopez contends that he has set forth a plausible "claim of deprivation of his constitutional rights to equal protection, equal treatment and moreso, deprivation Due Process of the law" and avers that the defendants are responsible "for the perpetuation of a miscarriage of justice" against him, "an actual innocent man" with respect to his criminal case, "Commonwealth v. George Ivan Lopez, Case # 1884/1995" in the Lehigh County Court of Common Pleas.  (*Id.* at 10, 12-13.)  Lopez asserts that he "has informally pleaded with the defendants repeatedly for years to produce the requested discovery materials and has refused to do so under color of state law . . . [and he] will continue to suffer irreparably injuries by the defendant's fraudulent concealment of evidence." (*Id.* at 13.)  Lopez also avers that defendants have violated both 28 U.S.C. §241 and §242. (*Id.* at 11-12.)

In his request for relief, Lopez seeks the following: (1) a copy of his entire homicide file including witness statements, investigative reports, and prosecutor's notes; (2) Lehigh County Prison's daily log from January 1, 1995 through July 24, 1995, which refers to all cell movement sheets regarding Commonwealth witness "Daniel Lopez, AKA Timoteo Paladino;" (3) any and all statements made by Daniel Lopez to the police and criminal history and police reports in totality; (4) Clerk of Quarter Session files pertaining to himself and Daniel Lopez and Miguel Moreno; and (5) Miguel Moreno's polygraph testing in its

totality, and all police statements and visits with the District Attorney and defendants in this case. (*Id.* at 15.) Lopez asserts that the "requested documentation are [sic] crucial to further establish all the claims and constitutional violations that has create[d] a gross miscarriage of justice." (*Id.* at 10.) Lopez also seeks monetary damages in an unspecified amount. (*Id.* at 15.)

Public dockets reflect that on March 19, 1996, Lopez was convicted of first-degree murder, robbery, theft, receiving stolen property, and criminal conspiracy, in connection with the death of David Bolasky.[2] *See Commonwealth v. Lopez*, CP-39-CR-0001894-1995 (C.P. Lehigh); *Commonwealth v. Lopez*, 739 A.2d 485, 489 (Pa. 1999). Following the penalty phase hearing, the jury returned a death sentence, and Lopez was formally sentenced to death on April 17, 1996. *Lopez*, 739 A.2d at 487. Lopez filed a direct appeal to the Pennsylvania Supreme Court, and on October 1, 1999, his conviction was affirmed. *Lopez*, 739 A.2d at 500. Thereafter, the United States Supreme Court denied Lopez's petition for writ of certiorari. *Lopez v. Pennsylvania*, 530 U.S. 1206 (2000).

Lopez sought relief in Pennsylvania state court pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). *See Commonwealth v. Lopez*, 854 A.2d 465 (Pa. 2004). The PCRA court denied him relief, and the Pennsylvania Supreme Court affirmed this decision on July 22, 2004. *Lopez*, 854 A.2d. at 472. Lopez filed a second PCRA petition on May 9, 2005, which was denied by the PCRA Court and affirmed by the Pennsylvania Supreme Court on August 20, 2012. *See Commonwealth v. Lopez*, 51 A.3d 195 (Pa. 2012). Since that date, Lopez has filed three additional PCRA petitions, all of which were dismissed by the PCRA Court and affirmed by the Pennsylvania Supreme Court. See *Commonwealth v.*

---

[2] The Court takes judicial notice of the public dockets and legal opinions related to Lopez's conviction and his efforts to challenge that conviction. *See Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that courts may consider matters of public record).

*Lopez*, 161 A.3d 171 (Pa. 2017); *Commonwealth v. Lopez*, 196 A.3d 603 (Pa. 2018), and *Commonwealth v. Lopez*, 249 A.3d 993, 1001 (Pa. 2021).

On April 27, 2005, Lopez filed a federal habeas petition, raising, *inter alia*, a claim that an undisclosed plea deal existed between co-defendant Moreno and the Commonwealth. Lopez averred that the prosecution committed a *Brady* violation by failing to disclose its whole deal with Moreno, that in exchange for his testimony against Lopez, Moreno would not only avoid the death penalty, but he would also receive a significantly reduced charge of third-degree murder and a significantly reduced sentence. *Lopez v. Beard*, Civ. A. No. 04-4181, 2020 WL 4201507, at *1 (E.D. Pa. July 1, 2020) (Surrick, J.). Lopez contends that had the jury known about the whole deal, the jury would have evaluated Moreno's testimony differently and would have reached a different verdict. (*Id.*)

On April 6, 2020, Lopez filed a Motion for Judgment on Claim XVII of his Petition for Habeas Corpus. *See id.*, ECF No. 135. In the motion, he argued that "[b]ased upon the evidence of record, as well as that developed through the discovery process, it is clear that there was an undisclosed agreement between the Commonwealth and its witness, Miguel Moreno" which ultimately resulted in Moreno pleading guilty to third-degree murder. *Id.* at 1. The Court permitted Lopez to conduct discovery "regarding the undisclosed plea agreement with Moreno," and it was represented in the motion that "discovery is now complete."[3] *Id.* at 2, 5.

---

[3] Much of the discovery Lopez currently seeks was given to him during federal habeas review. *See Lopez*, 2017 WL 1293389, at *7 ("the Commonwealth shall provide [Lopez] with any evidence in its possession or control tending to show that Moreno testified pursuant to an agreement with the Commonwealth. In addition, the results of any polygraph examinations of Moreno shall be provided to [Lopez]"). Lopez also took the depositions of Gavin P. Holihan, Esquire, the former Lehigh County Assistant District Attorney who was the lead prosecutor, and Joseph H. Hanna, the former Lehigh County Detective who was the lead investigator on the case. *Lopez*, 2019 WL 2162300, at *2. Finally, the habeas court permitted the following discovery: (1) supervised inspection of the Lehigh County District Attorney's Office file related to Lopez's prosecution; (2) supervised inspection of the file of Earl Supplee, Esquire, the Lehigh

By Memorandum and Order filed July 21, 2020, the Court denied Lopez's motion for judgment, noting that

> [a]ddressing first the evidentiary components of the *Brady* analysis, we consider whether the Commonwealth suppressed evidence favorable to Lopez, i.e., an additional agreement between the prosecution and Moreno. We previously granted Lopez leave to conduct discovery on this issue. *See Lopez*, 2019 WL 2162300, at *4; *Lopez*, 2017 WL 1293389, at *7. In his Motion, Lopez contends that his "discovery efforts have been largely fruitless as none of the witnesses have a recollection of the events sufficient to explain the Moreno anomaly." However, despite having no substantive evidence to support his claim, he then goes on to argue that "[i]t is hard, if not impossible, to imagine, that the Commonwealth agreed to only remove the death sentence but failed to reach at least an implicit agreement as to what Moreno's cooperation would ultimately yield to him."

*Lopez*, 2020 WL 4201507, at *1. The Court concluded that because "Lopez's position is based on sheer speculation," he could not meet his burden of proof. (*Id.*) The Court further determined that this claim also failed on the prejudice prong of the *Brady* analysis. In so doing, the Court reasoned:

> [t]here is no dispute that the jury knew that Moreno was being spared the death penalty in exchange for his testimony. The jury knew Moreno's motives in testifying and that he had an incentive to please the Commonwealth. Even if there was an understanding under which Moreno would be given an even lighter sentence, evidence of that understanding, for impeachment purposes, would be cumulative and immaterial. Accordingly, Lopez has failed to meet *Brady*'s prejudice requirement.

*Lopez*, 2020 WL 4201507, at *2. Lopez's conviction has not been vacated or otherwise invalidated. *See Commonwealth v. Lopez*, Docket No. CP-39-CR-0001894-1995 (C.P. Lehigh).

---

County Public Defender who represented Moreno; (3) the videotaped deposition of Theodore Racines, Esquire (co-prosecutor); and (4) the submission of interrogatories to the Honorable Robert L. Steinberg, who was the Lehigh County District Attorney at the time of Lopez's prosecution and Moreno's plea. *Lopez*, 2019 WL 2162300, at *4.

II

Lopez paid this case's filing fee. Nonetheless, because he is a prisoner the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not

7

suffice. *Iqbal*, 556 U.S. at 678.  Moreover, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  As Lopez is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013))*.

## III

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Even construing his allegations liberally, in particular Lopez's claim that Defendants are in possession of exculpatory evidence that establishes his actual innocence, his claims must be interpreted as asserting constitutional challenges to his Lehigh County criminal conviction.  His claims, however, are not cognizable under § 1983 to the extent he is seeking release.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  In other words, Lopez's claims based on alleged constitutional violations that occurred in connection

8

with his prosecution and trial are not cognizable in a § 1983 action because those claims must be pursued by filing a petition for a writ of *habeas corpus*. *See Leamer v. Fauver*, 288 F.3d 532, 544 (3d Cir. 2002) (explaining that "whether *Preiser* and its progeny require a claim to be brought under habeas" is determined by whether "the claim would fall within the 'core of habeas' and require sooner release if resolved in the plaintiff's favor").

To the extent he seeks injunctive relief forcing the Defendants to turn over *Brady* material, the claim must still be dismissed. In *Skinner v. Switzer*, the Supreme Court held that a lawsuit seeking to compel post-conviction DNA testing is cognizable in a § 1983 action because "[s]uccess in the suit gains for the prisoner only access to the DNA evidence, which may prove exculpatory, inculpatory, or inconclusive." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011). In other words, where DNA testing is sought in the post-conviction setting, success on the prisoner's claim does not necessary imply the invalidity of an intact conviction. *Id.* In so holding, the *Skinner* court distinguished claims based on allegations that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S.C. 83 (1963). "Unlike DNA testing, which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." *Skinner*, 562 U.S. at 536 ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."). In other words, success on claims that the prosecution withheld exculpatory evidence from a criminal defendant necessarily implies the invalidity of the underlying conviction.

Here, Lopez's claims are predicated on allegations that the Defendants withheld exculpatory evidence from him at trial and in post-conviction proceedings.[4] His allegations make clear that it is the loss of exculpatory evidence that forms the basis for his claims. (*See* ECF No. 2 at 8) (asserting that DA Martin, AG Shapiro and the City of Lehigh "have engaged in criminal conspiracy with the sole intent to fraudulently conceal exculpatory evidence pertaining to the jailhouse informant, Daniel Lopez, AKA Timoteo Paladino and co-defendant Miguel Moreno, among countless documentation of exculpatory and impeachment evidence" and have . . . "refus[ed] to provide him "with his inherent right to full discovery" as delineated in *Brady v. Maryland*.) Success on these claims, accordingly, would necessarily imply the invalidity of his currently intact convictions. Accordingly, Lopez's claims are not cognizable in a § 1983 action.

---

[4] To the extent that Lopez asserts that the absence of a Conviction Integrity Unit ("CIU") in Lehigh County has somehow violated his rights, the Court is not aware of any freestanding constitutional right which would allow a prisoner to obtain review of his or her conviction by a CIU. In fact, there appears to be no specific constitutional right to seek discretionary prosecutorial reexamination of charging decisions. *See Wayte v. United States,* 470 U.S. 598, 607 (1985) (holding that prosecutors are granted broad discretion in charging decisions so long as the decision is not based on an unjustifiable standard such as race, religion, or other arbitrary classification); *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications."); *Miller v. Ferguson*, Civ. A. No. 19-2456, 2019 WL 4933404, at *5 (E.D. Pa. Oct. 4, 2019).

Moreover, while Philadelphia County may currently be the only county in Pennsylvania with a designated CIU, the Pennsylvania Office of Attorney General maintains its own Conviction Integrity Section ("CIS"), which was established in January 2020. According to its website,

> The Conviction Integrity Section (CIS) reviews credible claims of innocence in coordination with district attorneys to correct any miscarriage of justice and seek the truth. . . . The CIS will review claims of innocence **statewide** and provide substantial resources to review past convictions in collaboration with district attorneys, police agencies and victims to ensure justice.

*See* Office of Attorney General, Commonwealth of Pennsylvania, https://www.attorneygeneral.gov/criminal-law-division/conviction-integrity-section (last visited Jan. 7, 2022) (bolded emphasis added).

10

Finally, to the extent that Lopez seeks damages based on an alleged wrongful conviction for failure to turn over exculpatory evidence, his claims are barred by the principle announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486-87 (footnote and citation omitted). More recently, the Supreme Court has elaborated on that principle, explaining that "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted).

IV

For the foregoing reasons, the Court will dismiss Lopez's Complaint for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii). Although Lopez will not be permitted to file an amended complaint in this case, the dismissal of his claims is without prejudice to him filing a new lawsuit in the event his convictions are invalidated in the future. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016). An appropriate order follows, which shall be docketed separately.

BY THE COURT:


*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**